UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLARD McCARLEY, | ) | 5:09CV2012 |
| | ) | |
| Petitioner | ) | JUDGE BENITA PEARSON |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| RICHARD HALL, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent | ) | REPORT AND RECOMMENDED |
| | ) | DECISION OF MAGISTRATE JUDGE |

McHARGH, MAG. J.

The petitioner Willard McCarley ("McCarley") has filed a petition through

counsel for a writ of habeas corpus, arising out of his 2007 conviction for aggravated

murder, in the Summit  County (Ohio) Court of Common Pleas.  (Doc. 1.)  In his

petition, McCarley raises five grounds for relief:

> 1.  Petitioner's right to confront the witnesses against him, as
> guaranteed by the Sixth and Fourteenth Amendments of the United
> States Constitution, were violated when the court admitted out of
> court statements made by a child when the adult interviewer, working
> at the behest of law enforcement, deliberately elicited the statements
> to investigate a past crime.
>
> 2.  Petitioner's right to due process of law and a fair trial were violated
> when the trial court allowed the admission of irrelevant
> character and other-acts evidence in violation of the Fifth, Sixth and
> Fourteenth Amendments to the United States Constitution.
>
> 3.  Petitioner's right to a confront witnesses against him was violated
> when the jury was permitted to consider witnesses' statement
> regarding what the victim told them about Petitioner before she was
> murdered in violation of the Sixth and Fourteenth Amendments to the
> United States Constitution.

4.  Petitioner was denied the effective assistance of trial counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when trial counsel failed to object to serious errors during Petitioner's trial.

5.  Petitioner was denied the effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when appellate counsel failed to raise meritorious issues in Petitioner's appeal of right.

(Doc. 1, § 12.)  The respondent has filed an Answer/Return of Writ, arguing that certain claims are barred by procedural default, and others are meritless.  (Doc. 7.) McCarley has filed a Traverse.  (Doc. 10.)  With leave of court, the respondent filed a reply to the traverse.  (Doc. 12.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The court of appeals set forth the following factual and procedural background:

Charlene Puffenbarger filed a paternity suit naming McCarley as the father of her two year old son in November of 1991.  Charlene filed the suit to obtain child support from McCarley, who initially denied paternity.  McCarley did not wish to pay Charlene child support as he was already paying child support to Kim Pennington, his former girlfriend and the mother of his six year old son.  McCarley threatened Charlene to drop the suit and stated that he would kill her before paying her child support.

On January 20, 1992 at approximately 10:00 a.m., a neighbor came to Charlene's apartment and found her on the couch.  Charlene had several scalp lacerations, defensive wounds on her hands, and a leather strap wrapped twice around her neck.  The coroner later estimated that Charlene had died sometime between 12:30 and 1:30 a.m.  Both of Charlene's two children were at home when her murder occurred.

2

When the police arrived at Charlene's apartment, her three year old son ("D.P.") repeatedly looked at the uniformed officers and stated: "It was him.  He hurt mommy."  Four days later, he made related statements in the presence of Phyllis Puffenbarger, D.P.'s grandmother.  D.P. picked up a toy telephone and said things such as:

"I am going to get the belt.  A policeman.  Go kick that window.  Phone. Get the stick.  I am going to shoot you.  * * * A policeman.  My mom seen the policeman.  * * * What you do that to my mom.  * * * Policeman hit my mommy.  Put tape on her."

Phyllis testified that D.P. had tears in his eyes and was looking at a picture of his mother when he made the statements.  As a result of this incident, Phyllis contacted the police and took D.P. to a child psychologist at their suggestion.  Dr. Dawn Lord was able to elicit several similar statements from D.P. during her sessions with him.

On December 19, 1995, police officers made a surprise visit to McCarley's home on an unrelated matter.  While speaking with McCarley in his garage, police officer Dennis Balogh saw a deputy sheriff's jacket and sheriff's cap strewn across a moving dolly.  Officer Balogh remembered D.P.'s statements from years before and confiscated the jacket and cap as contraband.

On May 21, 2004, a grand jury indicted McCarley on one count of aggravated murder, a special felony embodied in R.C. 2903.01(A).  The jury ultimately found McCarley guilty, but an error during trial caused this Court to reverse the jury's verdict on appeal and remand the case. See State v. McCarley, 9th Dist. No. 22562, 2006-Ohio-1176.[1] McCarley's second trial commenced on January 16, 2007.  On January 25, 2007, the jury found McCarley guilty of aggravated murder.  He was sentenced to life imprisonment with the possibility of parole in twenty years.

(Doc. 7, RX 26, at 1-3; State v. McCarley, No. 23607, 2008 WL 375842, at *1 (Ohio

Ct. App. Feb. 13, 2008).)

---

[1]  (Doc. 7, RX 13; State v. McCarley, No. 22562, 2006 WL 625968 (Ohio Ct. App. Mar. 15, 2006).)

After his retrial, McCarley filed a direct appeal, raising five assignments of error:

1. The trial court erred in allowing Dr. Lord to testify regarding statements made to her by the decedent's three-year-old son, in violation of appellant's constitutional right to confront and cross-examine witnesses against him.

2. The court erred in permitting evidence of "other acts" via the testimony of Kimberly Pennington in violation of the Ohio Rules of Evidence.

3. The court erred in permitting hearsay evidence from numerous witnesses, in direct violation of the defendant's right to confront his accusers and in violation of Ohio Rules of Evidence involving hearsay.

4. There was insufficient evidence as a matter of law as to the essential element of prior calculation and design to sustain the conviction for aggravated murder.

5. The trial court erred in allowing DNA evidence without holding a pretrial evidentiary hearing to determine the reliability and admissibility of such evidence.

(Doc. 7, RX 24.)  The court of appeals overruled his assignments of error, and affirmed the conviction.  (Doc. 7, RX 26; McCarley, 2008 WL 375842.)

McCarley appealed to the Supreme Court of Ohio, proposing five propositions of law:

1. The Sixth Amendment's Confrontation Clause, as interpreted by the United States Supreme Court in Crawford v. Washington (2004), 541 U.S. 36, prohibits the introduction of out-of-court statements made by a child when an adult interviewer working at the behest of law enforcement deliberately elicited the statements for purposes of investigating a past crime.

2. A trial court commits prejudicial error by allowing evidence under the past recollection recorded exception to the hearsay rules when the witness has no independent recollection of preparing the record.

4

3. A trial court commits prejudicial error by allowing the admission of irrelevant character and prior acts evidence in violation of evidence rules 402 through 405, R.C. 2945.49, and the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.

4. A defendant's right to a fair trial is violated when the jury is permitted to consider the inadmissible hearsay testimony of multiple state witnesses.

5. When the State fails to prove each and every element of the offense through reliable and admissible evidence, the defendant's conviction is legally insufficient.

(Doc. 7, RX 28.)  The state high court denied leave to appeal, and dismissed the

appeal as not involving any substantial constitutional question.  (Doc. 7, RX 30;

State v. McCarley, 118 Ohio St.3d 1464, 888 N.E.2d 1115 (2008).)

While his appeal to the state supreme court was pending, McCarley filed an

application to reopen his appeal pursuant to Ohio App. Rule 26(B).  McCarley

alleged that appellate counsel was ineffective for failing to raise the following

assignments of error:

1. The trial court violated Mr. McCarley's rights to due process and a fair trial when it allowed identification testimony arising from an identification process that was unnecessarily suggestive and conducive to misidentification. Fifth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

2. The prosecutor's pervasive pattern of misconduct throughout trial violated Mr. McCarley's rights to due process and a fair trial. Fifth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

3. Trial counsel rendered constitutionally deficient performance when he failed to object to the erroneous admission of other-acts testimony; when he failed to object to numerous improper remarks made by the

5

prosecutor during closing argument; when he failed to object to unauthenticated police reports, which contained inadmissible hearsay; and when he failed to object to the admission of multiple gruesome photographs. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

4. Mr. McCarley was denied his constitutional right to a fair trial due to the cumulative effect of errors that occurred throughout his trial. Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

(Doc. 7, RX 31.)  The court of appeals denied his application. (Doc. 7, RX 32.)

McCarley appealed the denial to the Supreme Court of Ohio, raising two

proposition of law:

1. When an appellate attorney fails to raise numerous, meritorious issues in a criminal defendant's one and only direct appeal, and when appellate counsel instead raises weak, unconvincing issues, the attorney renders constitutionally inadequate assistance, in contravention of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

2. The court of appeals deprives a defendant of due process by refusing to reopen a direct appeal when the defendant has presented a "genuine issue" that he or she was deprived the effective assistance of appellate counsel.

(Doc. 7, RX 34.)  On Sept. 10, 2008, the court dismissed the appeal as not involving

any substantial constitutional question.  (Doc. 7, RX 36; State v. McCarley, 119

Ohio St.3d 1450, 893 N.E.2d 519 (2008).)

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

6

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court

considers the state decision to be erroneous or incorrect.  Rather, the federal court

must determine that the state court decision is an objectively unreasonable

application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

### III.  PROCEDURAL DEFAULT

The respondent contends that the second, third, fourth, and portions of the fifth, grounds of the petition are procedurally defaulted.  (Doc. 7, at 15-19.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), aff'd, 507 F.3d 916 (6th

8

Cir. 2007).  Thus, where a state prisoner has procedurally defaulted his federal

claims in state court, habeas review of those claims is barred "unless the prisoner

can demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will

result in a fundamental miscarriage of justice."  Buell, 274 F.3d at 348 (quoting

Coleman, 501 U.S. at 750); Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio

2004), aff'd, 547 F.3d 297 (6th Cir. 2008), cert. denied, 103 S.Ct. 503 (2009).

The court considers four factors to determine whether a claim has been

procedurally defaulted:  (1) the court must determine whether there is a state

procedural rule that is applicable to the petitioner's claim, and whether the

petitioner failed to comply with the rule; (2) the court must decide whether the state

courts actually enforced the procedural sanction; (3) the court must decide whether

the state procedural forfeiture is an adequate and independent state ground on

which the state can rely to foreclose review of the federal claim; and, (4) the

petitioner must demonstrate that there was cause for him not to follow the

procedural rule, and that he was actually prejudiced by the alleged constitutional

error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir.

1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).


## A.  Second Ground:  Evidentiary Rulings

The second ground of the petition is:  "Petitioner's right to due process of law

and a fair trial were violated when the trial court allowed the admission of

irrelevant character and other-acts evidence in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution." (Doc. 1, § 12.)  The supporting facts of the petition clarify that this ground relates to the testimony of McCarley's former girlfriend, Kimberly Pennington.  (Doc. 1, Exh. B, at 2.)

The respondent argues that this claim was not fairly presented to the state courts, and was procedurally defaulted for failure to object to the testimony at trial. (Doc. 7, at 19-24.)

### 1.  Contemporaneous Objection Rule

McCarley raised the issue of "other acts" testimony on direct appeal.  (Doc. 7, RX 24, at 8-10.)  However, the claim was raised as error by the trial court in admitting the testimony "in violation of the Ohio Rules of Evidence."  Id. at 8.  The argument was that the trial court misconstrued Ohio R. Evid. 404(B).  Id. at 9-10. The arguments were based on Ohio state law.  No federal constitutional issues were raised.  Id. at 8-10.

The state court of appeals pointed out that "McCarley did not object at trial to the other acts testimony," and declined to take up the issue.  (Doc. 7, RX 26, at 15; McCarley, 2008 WL 375842, at *7.)  The respondent argues that this claim was procedurally defaulted on that basis, and additionally that the claim was not fairly presented to the state court as a federal constitutional issue.  (Doc. 7, at 19-24.)

The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal habeas review.  Gulertekin v. Tinnelman-Cooper, 340 F.3d 415, 424 (6th Cir. 2003) (Ohio's

10

contemporaneous objection rule); Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001); Scott v. Mitchell, 209 F.3d 854, 865-871 (6th Cir.), cert. denied, 531 U.S. 1021 (2000)).  See generally Wainwright, 433 U.S. at 86-88 (contemporaneous objection rule adequate & independent state ground to foreclose habeas review).

As to the fourth Maupin factor, "cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule.  Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

McCarley raises ineffective assistance of appellate counsel as cause for his procedural default.  (Doc. 10, at 15-18.)  McCarley argues that, if appellate counsel had properly raised an ineffective assistance of trial counsel claim, based on trial counsel's failure to enter a contemporaneous objection, his second claim would be free of procedural default.  Id. at 17.

Ineffective assistance of counsel can serve as cause to overcome procedural default.  Smith v. Ohio, Dept. of Rehab. and Corr., 463 F.3d 426, 432 (6th Cir. 2006) (citing Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004)); Hinkle, 271 F.3d at 244. An ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  Claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals.  Monzo v. Edwards, 281 F.3d 568, 577 (6th Cir. 2002) (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).

11

McCarley did raise ineffective assistance of appellate counsel in his Rule 26(B) application for reopening.  (Doc. 7, RX 31, at 7-9.)  Specifically, he noted that appellate counsel failed to raise the claim that trial counsel was ineffective for failing to enter a contemporaneous objection to the testimony of Pennington.  Id. at 8.  The court finds that the claim was preserved for habeas corpus review, so appellate counsel's ineffectiveness could establish cause for McCarley's default of the claim at issue.  Henness v. Bagley, No. 2:01CV043, 2007 WL 3284930, at *10 (S.D. Ohio Oct. 31, 2007), aff'd, 644 F.3d 308 (6th Cir. 2011).

Attorney error cannot serve as cause for procedural default unless the performance of petitioner's counsel was constitutionally ineffective under the standard established in Strickland v. Washington, 466 U.S. 668 (1984).  Ege v. Yukins, 485 F.3d 364, 378 (6th Cir. 2007) (citing Edwards, 529 U.S. at 451); Hinkle, 271 F.3d at 244 (citing Murray, 477 U.S. at 487); Dixon v. Hudson, No. 1:05CV2499, 2008 WL 540905, at *5 (N.D. Ohio Feb. 25, 2008).

It is McCarley's burden to establish cause and prejudice to overcome the procedural default.  Hinkle, 271 F.3d at 244 (citing Lucas v. O'Dea, 179 F.3d 412, 418 (6th Cir. 1999)).   In order to establish a claim of ineffective assistance of counsel sufficient to establish cause for the procedural default, McCarley must show both deficient performance on the part of his appellate attorney and prejudice from the deficient performance:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

defendant by the Sixth Amendment.  Second, the defendant must show
that deficient performance prejudiced the defense.  This requires
showing that counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable.

Hill v. Mitchell, No. 1:98CV452, 2006 WL 2807017, at *49 (S.D. Ohio Sept. 27,

2006) (quoting Strickland, 466 U.S. at 687).  See also Monzo, 281 F.3d at 579.

Although McCarley argues in depth that ineffective assistance of appellate

counsel can be cause to overcome procedural default (doc. 10, at 15-17), he does not

show how counsel's performance was deficient.  He states, briefly, that appellate

counsel should have argued that

> . . . trial counsel was ineffective for failing to enter a contemporaneous
> objection to the testimony of Kimberly Pennington, in which she
> detailed Mr. McCarley's violent propensities and hatred toward
> women.  Trial counsel further failed to object to the admission of three
> police reports describing altercations between Mr. McCarley and Ms.
> Pennington despite the fact that those reports were never
> authenticated and contained inadmissible other-acts evidence.

(Doc. 10, at 17.)  His argument in his Rule 26(B) application was almost identical,

and provides no further indication of why counsel's performance should be found

deficient.  See doc. 7, RX 31, at 8.

Review of counsel's performance is highly deferential and requires that courts

"indulge a strong presumption that counsel's conduct falls within a wide range of

reasonable professional assistance."  Monzo, 281 F.3d at 579.

Ordinarily, to establish deficient performance, the petitioner must

demonstrate that  appellate counsel made an objectively unreasonable decision by

choosing to raise other issues, rather than a particular argument that "was clearly

13

stronger than issues that counsel did present." Webb v. Mitchell, 586 F.3d 383, 399 (6th Cir. 2009), cert. denied, 130 S.Ct. 2110 (2010) (quoting Smith v. Robbins, 528 U.S. 259, 285, 288 (2000)); see also Caver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003)).

Appellate counsel is not ineffective for failing to raise every colorable claim. Wilson v. Hurley, No. 03-3481, 2004 WL 1941300 (6th Cir. Aug. 30, 2004), cert. denied, 543 U.S. 1160 (2005); Coleman v. Mitchell,  268 F.3d 417, 430 (6th Cir.), cert. denied, 535 U.S. 1031 (2001) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Failure to raise an issue on appeal constitutes ineffective assistance only if there is "a reasonable probability" that the issue would have changed the result of the appeal.  Ivory v. Jackson, 509 F.3d 284, 294 (6th Cir. 2007), cert. denied, 128 S.Ct. 1897 (2008).  Given the appellate court's assessment of the admissible evidence in its ruling on McCarley's sufficiency argument, it is unlikely that this issue would have changed the result of the appeal.

McCarley has failed to establish that his appellate attorney was ineffective under the two-pronged standard set forth in Strickland sufficient to establish cause and prejudice to excuse the procedural default.  See, e.g., Hinkle, 271 F.3d at 246; Henness, 2007 WL 3284930, at *10; Hill, 2006 WL 2807017, at *52.  Moreover, his case does not fall within the narrow class of cases to which the "fundamental miscarriage of justice exception" applies.  Hinkle, 271 F.3d at 246 (citing Calderon v. Thompson, 523 U.S. 538, 559 (1998)).   Thus, the second ground is procedurally defaulted.

14

2.  Due Process:  Denial of Fundamental Fairness?

McCarley also argues that a claim grounded upon the improper inclusion or exclusion of evidence raises constitutional concerns if the ruling "infringed upon a weighty interest of the accused."  (Doc. 10, at 14, quoting Baze v. Parker, 371 F.3d 310, 323 (6th Cir. 2004).)  He contends that an evidentiary ruling that is so egregious that it results in "a denial of fundamental fairness" violates due process.  Id., quoting Baze, 371 F.3d at 324.

McCarley does not identify the "weighty interest" infringed, nor does he explain why he believes the contested ruling is so egregious that it results in "a denial of fundamental fairness."  See generally doc. 10, at 14-15.  The court in Baze noted that there is a constitutional right to present a defense, yet the right is not absolute, and defendants "must comply with established rules of procedure and evidence."  Baze, 371 F.3d at 323.  The Supreme Court has pointed out that the Due Process Clause has "limited operation" beyond those guarantees explicit in the Bill of Rights, and therefore the Court has defined violations that violate "fundamental fairness" very narrowly.  Dowling v. United States, 493 U.S. 342, 352 (1990).

Specifically, the Sixth Circuit has found that there is no clearly established Supreme Court precedent which holds that a state violates due process by admitting other bad acts evidence.  Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir.), cert. denied, 540 U.S. 930 (2003).  "While the Supreme Court has addressed

whether prior acts testimony is permissible under the Federal Rules of Evidence[2], it has not explicitly addressed the issue in constitutional terms."  Id. at 513 (citing Old Chief v. United States, 519 U.S. 172 (1997); Huddleston v. United States, 485 U.S. 681 (1988)).  McCarley has not identified a due process violation which would somehow overcome his procedural default.

### 3.  Not Fairly Presented as Federal Claim

In addition, because this claim was not fairly presented to the state court of appeals as a federal claim, this court does not have jurisdiction to grant the petition on the basis of it.  Baldwin v. Reese, 541 U.S. 27 (2004); Jacobs, 265 F.3d at 415; McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), cert. denied, 532 U.S. 958 (2001).  To "fairly present" the claim to the state courts, a habeas petitioner must present his claim as a federal constitutional issue, not as an issue arising under state law.  Koontz v. Glossa, 731 F.2d 365, 368 (6th Cir. 1984).

McCarley argues that he presented a federal due process argument in his appeal to the Supreme Court of Ohio.  However, the Supreme Court of Ohio will not consider a constitutional question which was not raised and argued in the lower courts.  Leroy v. Marshall, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); State v. Phillips, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971).

---

[2] Ohio Rule of Evidence 404(B) is substantially similar to the federal rule. Broom v. Mitchell, 441 F.3d 392, 405 n.20 (6th Cir. 2006), cert. denied, 549 U.S. 1255 (2007).

16

The petition should not be granted on the basis of the second ground because it has been procedurally defaulted.

## B.  Third Ground:  Evidentiary Rulings

The third ground of the petition is: "Petitioner's right to a confront witnesses against him was violated when the jury was permitted to consider witnesses' statement regarding what the victim told them about Petitioner before she was murdered in violation of the Sixth and Fourteenth Amendments to the United States Constitution."  (Doc. 1, § 12.)

The respondent argues that McCarley has procedurally defaulted this claim. (Doc. 7, at 24-27.)  McCarley has withdrawn this claim.  (Doc. 10, at 19.)

## C.  Fourth Ground:  Ineffective Assistance of Trial Counsel

The fourth ground of the petition is:  "Petitioner was denied the effective assistance of trial counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when trial counsel failed to object to serious errors during Petitioner's trial."

The respondent argues that McCarley has procedurally defaulted this claim by failing to properly present it to the state courts.  (Doc. 7, at 27-28.)  McCarley has withdrawn this claim.  (Doc. 10, at 19.)

17

### C.  Fifth Ground:  Ineffective Assistance of Appellate Counsel

The fifth ground of the petition is:  "Petitioner was denied the effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, when appellate counsel failed to raise meritorious issues in Petitioner's appeal of right."  McCarley raised numerous issues which he argues support this claim:  1) Failure to raise ineffectiveness of trial counsel; 2) Failure to raise prosecutorial misconduct, such as misrepresentation of the DNA evidence, improper reliance on other-acts evidence, and improper comments on the credibility of witnesses; 3) Failure to challenge trial court's denial of motion for mistrial; and 4) Failure to raise "the disappearance of key exculpatory evidence in the possession of the prosecution."  (Doc. 1, Exh. B, at 7.)

The respondent argues that McCarley has procedurally defaulted certain of these sub-claims.  (Doc. 7, at 29.)  For example, the respondent notes that the issue of the denial of the motion for a mistrial, and the alleged disappearance of exculpatory evidence, were never presented to the state court.  Id.

As noted earlier, claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals.  Monzo, 281 F.3d at 577 (citing Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204); Ohio App. R. 26(B).  Reference to McCarley's application for reopening supports the respondent's contention that the denial of the motion for mistrial, and the alleged disappearance

of  exculpatory evidence, were issues not presented in his application.  See generally

doc. 7, RX 31.  Thus, these two sub-claims have been procedurally defaulted.

The other subclaims (failure to raise ineffectiveness of trial counsel and

prosecutorial misconduct) were raised in the application, and will be addressed in

the merits section of this report.  See doc. 7, RX 31, at 6-8.


## IV.  CONFRONTATION CLAUSE

The first ground of the petition is:

> Petitioner's right to confront the witnesses against him, as guaranteed
> by the Sixth and Fourteenth Amendments of the United States
> Constitution, were violated when the court admitted out of court
> statements made by a child when the adult interviewer, working at the
> behest of law enforcement, deliberately elicited the statements to
> investigate a past crime.

The supporting facts put forward by McCarley concern statements made by the

victim's three year old son Dustin ("D.P."), as an eyewitness to her murder.  The son

did not testify at trial, but his statements were introduced through other means.

(Doc. 1, Exh. B, at 1.)

First, "his grandmother — Phyllis Puffenbarger — was allowed to read from

notes she took four days after her daughter's death that detailed the statements

Dustin allegedly made about the incident. Consequently, Mr. McCarley had no

opportunity to confront or cross-examine Dustin regarding these statements."  (Doc.

1, Exh. B, at 1.)  The court of appeals found that these statements were properly

admitted as excited utterances.  (Doc. 7, RX 26, at 4-6; McCarley, 2008 WL 375842, at *2.)

The parties focus their dispute on the testimony of Dr. Lord.  McCarley presents the issue as:

> To further corroborate Dustin's alleged identification of Mr. McCarley as the assailant, the State offered the testimony of child-psychologist Dr. Dawn Lord. Dr. Lord, who had no independent recollection of treating Dustin, was allowed to read three letters she wrote to Detective John Karabatsos in which she detailed her interviews with the child.

(Doc. 1, Exh. B, at 1.)

The court of appeals addressed the issue as follows:

> McCarley argues that the trial court violated his right to confront the witnesses against him by allowing Dr. Lord to testify as to the statements that D.P. made during therapy.  Specifically, McCarley argues that: (1) D.P.'s statements were testimonial because D.P. went to see Dr. Lord at the request of the police, and (2) there was no opportunity to cross-examine D.P. at trial because he could not remember the statements that he had made as a three year old. McCarley claims that he suffered material prejudice as a result of Dr. Lord's testimony.  We disagree.
>
> Initially, we note that we have doubt as to the validity of McCarley's argument that D.P.'s statements to Dr. Lord during therapy were testimonial in nature.  See Crawford v. Washington (2004), 541 U.S. 36, 68-69 (finding that only testimonial statements are subject to the rigors of the confrontation clause); see, also, State v. Siler, 116 Ohio St.3d 39, 2007-Ohio-5637 (holding that a three year old child's statements to police were testimonial because the primary purpose of the questioning was to establish past events for later prosecution). Even assuming it was error to allow Dr. Lord to testify, however, we find the purported error to be harmless.  See Crim.R. 52(A); State v. Cutlip, 9th Dist. No. 03CA0118-M, 2004-Ohio-2120, at ¶ 17.  On harmless error analysis, we "inquire 'whether there is a reasonable possibility that the evidence complained of might have contributed to

the conviction.' " Id., quoting Madrigal, 87 Ohio St.3d at 388, citing Chapman v. California (1967), 386 U .S. 18, 23.

The record reflects that D.P. made other statements that were similar, if not identical, to the ones that he made to Dr. Lord.  Immediately after the police arrived at Charlene's apartment, D.P. pointed to uniformed officers and stated: "It was him.  He hurt mommy." Four days later, D.P. made several more statements in the presence of his grandmother Phyllis.  Former officer Eric Breiding and Phyllis Puffenbarger both testified as to the contents of these statements.  As discussed in the previous assignment of error, the trial court did not abuse its discretion in admitting Phyllis's testimony.  While McCarley does not challenge Breiding's testimony on appeal, we note that this testimony was also properly admitted under the excited utterance rule.  See Evid.R. 803(2).  D.P .'s statements to Breiding were spontaneous and were made much closer in time to the actual murder.  See Taylor, 66 Ohio St.3d at 300.  Accordingly, the trial court did not abuse its discretion in admitting Breiding's testimony.

Because D.P.'s statements to Eric Breiding and Phyllis Puffenbarger were properly admitted, D.P.'s statements to Dr. Lord only served as corroborative evidence.  McCarley has not shown that Dr. Lord's testimony, rather than D.P.'s other statements, contributed to his conviction.  See Madrigal, 87 Ohio St.3d at 388.  Consequently, we find that the error, if any, in admitting Dr. Lord's testimony was harmless.

(Doc. 7, RX 26, at 12-13; McCarley, 2008 WL 375842, at *5-*6.)

The respondent argues that the Confrontation Clause does not apply, because the boy's statements to the therapist were not "testimonial."  (Doc. 7, at 32.)  The respondent asserts that the state court's determination that the boy's statements to Dr. Lord was not testimonial was not contrary to, nor an unreasonable application of, clearly established federal law.  (Doc. 7, at 38-45.)  The respondent also contends that, even if the statements were improperly admitted, any error was harmless.  Id. at 45-48.  McCarley counters that the boy's out-of-court statements are testimonial under Crawford and Davis.  (Doc. 10, at 4-7.)

21

The Confrontation Clause of the Sixth Amendment provides an accused with the right to be confronted with the witnesses against him. Crawford v. Washington, 541 U.S. 36, 42 (2004); Pointer v. Texas, 380 U.S. 400, 406 (1965). A central purpose of the Confrontation Clause is to allow the defendant the opportunity to cross-examine the witnesses against him. Vasquez v. Kirkland, 572 F.3d 1029, 1035-1036 (9th Cir. 2009), cert. denied, 130 S.Ct. 1086 (2010) (citing Davis v. Alaska, 415 U.S. 308, 315-316 (1974)); Drake v. Woods, 547 F.Supp.2d 253, 264 (S.D. N.Y. 2008).

Crawford clarified that the Confrontation Clause requires that testimonial statements of witnesses absent from trial are properly admitted only where the declarant is unavailable, and where the defendant has had a opportunity to cross-examine. Crawford, 541 U.S. at 59, 68. The protection of the Confrontation Clause is not subject to "the vagaries of the rules of evidence" concerning hearsay. Crawford, 541 U.S. at 61.

The Crawford Court did not undertake a comprehensive definition of "testimonial," but noted that, at a minimum, it covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Crawford, 541 U.S. at 68; United States v. Cromer, 389 F.3d 662, 672 (6th Cir. 2004). Testimony may also be defined as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." Cromer, 389 F.3d at 672 (quoting Crawford, 541 U.S. at 51).

22

In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court addressed whether certain types of statements, not at issue here, were "testimonial" under Crawford. (The Court did affirm, however, that forfeiture by wrongdoing extinguishes confrontation claims. Davis, 547 U.S. at 833.) Davis found that statements in the course of police interrogation are non-testimonial where "the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." United States v. Arnold, 486 F.3d 177, 187 (6th Cir. 2007) (en banc), cert. denied, 552 U.S. 1103 (2008) (quoting Davis, 547 U.S. at 822). A statement is "testimonial" where the primary purpose of the interrogation "is to establish or prove past events potentially relevant to later criminal prosecution." Id. The Supreme Court has noted that Davis did not attempt to produce "an exhaustive classification of all conceivable statements." Michigan v. Bryant, 131 S.Ct. 1143, 1155 (2011) (quoting Davis, 547 U.S. at 822).

The Sixth Circuit has stated that the focus should be on the declarant, when determining whether a statement should be considered testimonial:

> The proper inquiry . . . is whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.

Miller v. Stovall, 608 F.3d 913, 923-924 (6th Cir. 2010), petition for cert. filed, (Dec 21, 2010) (No. 10-851) (quoting Cromer, 389 F.3d at 675); United States v. Johnson, 440 F.3d 832, 843 (6th Cir.), cert. denied, 549 U.S. 829 (2006).

23

The state court here rejected McCarley's contention that the statements at issue were "testimonial."  (Doc. 7, RX 26, at 12; McCarley, 2008 WL 375842, at *5.) McCarley contends that "the undeniable purpose of D.P.'s interview with Dr. Lord was to collect information for law enforcement and the continuing investigation into Charlene Puffenbarger's homicide."  (Doc. 10, at 6.)

In Blount v. Hardy, the Fourth Circuit affirmed the district court's denial of similar claim.  The court found that the state court "properly analyzed this claim under Crawford and concluded that [the child victim] could not have known that her statements to the therapists would be used at trial against [the defendant]."  Blount v. Hardy, No. 08-6366, 2009 WL 1970346, at *4 (4th Cir. July 9, 2009), cert. denied, 130 S.Ct. 1158 (2010).  The court found the state court's conclusion that the child victim's statements to her therapists were not "testimonial" was not contrary to or an unreasonable application of federal law.  Id. (citing cases).

The Fourth Circuit's analysis is similar to that mandated by the Sixth Circuit, which looks toward "whether the declarant intends to bear testimony against the accused."  Miller, 608 F.3d at 923-924 (quoting Cromer, 389 F.3d at 675); Johnson, 440 F.3d at 843.  As pointed out by the concurrence in Blount, Crawford and Davis provide limited guidance on what is "testimonial," beyond the factual situations in those cases.  Blount, 2009 WL 1970346, at *7 (Michael, J., concurring).

24

This court does not find that the state court's determination that the contested statements were not "testimonial" is contrary to or an unreasonable application of clearly established federal law as expressed in Crawford and Davis.

## A.  Harmless Error

More importantly, the state court held that any error in admitting Dr. Lord's testimony was harmless.  (Doc. 7, RX 26, at 12-13; McCarley, 2008 WL 375842, at *6.)  The court applied the following standard:  "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  (Doc. 7, RX 26, at 12; McCarley, 2008 WL 375842, at *5, citing State v. Madrigal, 87 Ohio St.3d 378, 388, 721 N.E.2d 52 (2000), cert. denied, 531 U.S. 838 (2000).)

In Madrigal, the court found that the admission of a codefendant's statements violated the defendant's Confrontation Clause rights.  Madrigal, 87 Ohio St.3d at 384-388, 721 N.E.2d at 60-63.  The court then stated that:

> . . . the final inquiry is whether the Sixth Amendment error was "harmless beyond a reasonable doubt."  This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

Madrigal, 87 Ohio St.3d at 388, 721 N.E.2d at 63 (citing Chapman v. California, 386 U.S. 18, 23 (1967).)  The court found the state's case was based on credible and compelling testimony of several eyewitnesses, and thus ruled that the admission of the codefendant's statements "while error, was harmless beyond a reasonable doubt."  Id.

25

Similarly here, the appellate court found the trial court's admission of the contested evidence was harmless.  The court noted that the child "made other statements that were similar, if not identical, to the ones he made to Dr. Lord." (Doc. 7, RX 26, at 13; McCarley, 2008 WL 375842, at *6.)  Because those statements were properly admitted, the statements to Dr. Lord "only served as corroborative evidence."  Id.  The court found that "McCarley has not shown that Dr. Lord's testimony, rather than D.P.'s other statements, contributed to his conviction."  Id.

"Confrontation Clause errors are subject to harmless-error analysis." Vasquez v. Jones, 496 F.3d 564, 574 (6th Cir. 2007).  The Supreme Court has reaffirmed that a federal habeas court must assess the prejudicial impact of constitutional error under the "substantial and injurious effect" standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Fry v. Pliler, 551 U.S. 112 (2007); see also Peterson v. Warren, No. 07-1405, 2009 WL 383730 (6th Cir. Feb. 17, 2009); Vasquez, 496 F.3d at 575.  The Brecht standard will apply in "virtually all" habeas cases.  Id.

The state court of appeals properly cited Chapman v. California, 386 U.S. 18 (1967), in which the Court held "that a constitutional error can be considered harmless only if a court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'"  Fry, 551 U.S. at 116 (quoting Chapman, 386 U.S. at 24). However, Fry clarified that the Chapman standard is limited to cases on direct review, and that Brecht's "more forgiving" standard governs on habeas review.  Id.

26

Under Brecht, the petitioner has to establish that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict," in order to obtain habeas relief. Brecht, 507 U.S. at 637-638. To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's verdict. Mitzel v. Tate, 267 F.3d 524, 534 (6th Cir. 2001), cert. denied, 535 U.S. 966 (2002) (citing Brecht, 507 U.S. at 637).

There are a number of factors a court may consider in analyzing whether a Confrontation Clause error was harmless or not:

> These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Jensen v. Romanowski, 590 F.3d 373, 379 (6th Cir. 2009); Stallings v. Bobby, 464 F.3d 576, 582 (6th Cir. 2006). After considering these factors and the overall strength of the prosecution's case, the court concludes that even if there had been constitutional error as to Dr. Lord's testimony, it did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637-638.

The petition should not be granted on the basis of the first ground.

## V.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The fifth ground of the petition is ineffective assistance of appellate counsel, and, as already discussed, several of the sub-claims have been procedurally defaulted.  The remaining issues, which McCarley claims appellate counsel failed to raise, are:  1) failure to raise ineffectiveness of trial counsel, and 2) failure to raise prosecutorial misconduct, such as misrepresentation of the DNA evidence, improper reliance on other-acts evidence, and improper comments on the credibility of witnesses  (Doc. 1, Exh. B, at 7.)  These issues were raised in his application for reopening.  (Doc. 7, RX 31.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

28

Monzo, 281 F.3d at 579. See generally Strickland v. Washington, 466 U.S. 668, 689 (1984) (two-part test). A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial. Evitts v. Lucey, 469 U.S. 387 (1985).

To establish deficient performance, McCarley must demonstrate that counsel made an objectively unreasonable decision by choosing to raise other issues, rather than an argument that "was clearly stronger than issues that counsel did present." Webb, 586 F.3d at 399 (quoting Smith, 528 U.S. at 285, 288). Appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit. Willis v. Smith, 351 F.3d 741, 745 (6th Cir. 2003).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable." Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

The state applied the standard for ineffective assistance established in Strickland v. Washington. (Doc. 7, RX 32, at 1.)

The court of appeals addressed his claims as follows:

. . . the record does not support a finding that the prosecutor's closing statements amounted to plain error. See State v. Smith, 97 Ohio St.3d 367, 2002-Ohio-6659, at ¶ 45 (noting that plain error analysis applies when defendant's counsel fails to object to the prosecutor's alleged misconduct). McCarley takes issue with the following three items: (1) comments as to the Y-STR DNA evidence in the case; (2) comments about "other acts" evidence; and (3) comments about the credibility of the witnesses, which relied upon facts not in evidence. As to the DNA evidence, the prosecutor's statement during closing argument was that

29

the "major contributor of the DNA on those ends of the murder weapon
is Willard McCarley or [his son] or Willard McCarley's father.  And I
submit to you in this case, father, son did not kill [the victim]."  We do
not believe either of these statements affected McCarley's substantial
rights or amounted to prosecutorial misconduct.  As to the "other acts"
evidence, McCarley's counsel raised this argument in his appeal.  See
State v. McCarley, 9th Dist. No. 23607, 2008-Ohio-552, at ¶27-31.
Since an argument in support of reopening may not rest upon an issue
that this Court previously "considered on the merits *** or *** an
incomplete record[,]" we decline to address it.  See App.R. 26(B)(2)(c).
Finally, as to McCarley's third argument, he claims that the prosecutor
"improperly commented on the veracity of the State's witnesses and
the lack of credibility of defense witnesses and made repeated
references to facts not in evidence."  McCarley does not specify what
these comments were, nor does he specify which facts were improperly
referenced.  Consequently, McCarley has failed to show that a genuine
issue exists with regard to his prosecutorial misconduct argument.  See
Strickland, 466 U.S. at 687.

McCarley's third argument is that his appellate counsel was ineffective
in failing to raise an ineffective assistance of trial counsel claim.  First,
McCarley argues that his trial counsel should have objected to his
former girlfriend's testimony and the police reports containing the
same information.  He claims that this "other acts" evidence, implying
that he had "violent propensities and hatred toward women[,]"
prejudiced his trial.  This Court has consistently held that a "trial
counsel's failure to make objections is within the realm of trial tactics
and does not establish ineffective assistance of counsel."  State v.
Guenther, 9th Dist. No. 05CA008663, 2006-Ohio-767, at ¶74.
Moreover, we are convinced that the omission of this evidence would
not have changed the result in McCarley's trial.  See Strickland, 466
U.S. at 687.  McCarley's statements that the victim "wouldn't live to
see [her] court date" and that "he would kill [her] first before he would
pay child support" were admitted during trial.  Thus, other evidence
supported the conclusion that McCarley had "violent propensities[.]"
McCarley next argues that his trial counsel should have objected to
"many of the improper comments the prosecutor made during closing
argument[,]" yet, he fails to identify the specific comments with which
he takes issue.  Additionally, we have already determined in reviewing
McCarley's prosecutorial misconduct argument that several of the
prosecutor's remarks were not improper.  Lastly, McCarley argues that
his trial counsel should have objected to the State's photographic
evidence, which was gruesome and duplicative.  The vast majority of

the photographs introduced at trial were pictures of the crime scene itself, including the lay out of the apartment and the evidence collected.  Very few of the "more than fifty photographs" McCarley complains of depicted the victim.  We cannot conclude that the inclusion of these photographs prejudiced McCarley's trial.  Thus, McCarley's third argument lacks merit.  See id.

(Doc. 7, RX 32, at 2-4.)

Reviewing the arguments as raised by McCarley (doc. 7, RX 31, at 6-9), and the state court's resolution of those arguments (doc. 7, RX 32, at 2-4), this court cannot find that the state court's application of Strickland to the facts of this case was "objectively unreasonable."  Washington, 228 F.3d at 702.  The petition should not be granted on the basis of the fifth ground.


SUMMARY

The petition for a writ of habeas corpus should be denied.

The petition should not be granted on the basis of the second ground, and portions of the fifth ground, because those claims have been procedurally defaulted. McCarley has withdrawn the third and fourth grounds of his petition.  (Doc. 10, at 19.)

The petition should not be granted on the basis of the first ground because McCarley failed to establish that the state court's decisions are contrary to or an unreasonable application of clearly established federal law as expressed in Crawford and Davis.  The petition should not be granted on the basis of the fifth

31

ground, because the court cannot find that the state court's application of Strickland to the facts of this case was "objectively unreasonable."

<u>RECOMMENDATION</u>

It is recommended that petition for a writ of habeas corpus should be denied.

Dated:   Aug. 24, 2011              /s/ Kenneth S. McHargh
                                    Kenneth S. McHargh
                                    United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).