PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLARD McCARLEY, | ) | CASE NO. 5:09CV02012 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| RICHARD HALL, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** |

Before the Court is Petitioner Willard McCarley's Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 alleging five grounds for relief.  ECF No. 1.  The case was

automatically referred to Magistrate Judge Kenneth S. McHargh for preparation of a Report and

Recommendation.[1]  In his Report, the magistrate judge recommends that the Court deny

Petitioner's Petition.  ECF No. 14.  Petitioner timely filed objections to the Report and

Recommendation (ECF No. 17), to which Respondent filed a response (ECF No. 19).

For the reasons articulated below, the Court adopts the Report and Recommendation and

dismisses Petitioner's Petition.

## I.  Background

The Report and Recommendation sets forth the procedural history and factual

background described in the opinion of the Ohio Court of Appeals.  ECF No. 14 at 2-6.

Petitioner does not challenge the descriptions of the procedural or factual history in his

objections.  In the interest of efficiency, the Court provides only a brief summary below.

---

[1]  The matter was referred to  Magistrate Judge Kenneth S. McHargh pursuant to Local
Rule 72.2 and General Order 2011-2.

(5:09CV02012)

### A. Factual Background

In 1991, Charlene Puffenbarger ("Puffenbarger") filed a paternity suit naming Willard McCarley ("McCarley") the father of her two-year old son, Dustin Puffenbarger ("D.P."). McCarley instructed Puffenbarger to drop the suit and told Puffenbarger that he would kill her before paying child support.  Puffenbarger, however, did not drop the paternity lawsuit.

Approximately one year later, Puffenbarger's neighbor found Puffenbarger dead in her apartment.  Puffenbarger had "several scalp lacerations, defensive wounds on her hands, and a leather strap wrapped twice around her neck."  D.P. and his half-brother were home when the murder occurred.  According to Lieutenant John Karabatsos' testimony at trial, when the police officers arrived at Puffenbarger's apartment, D.P. repeatedly looked at the officers and exclaimed, "It was him.  He hurt mommy[,]" indicating that a person in uniform "hurt" Puffenbarger.  Phyllis Puffenbarger, D.P.'s maternal grandmother, testified that four days after the murder she observed D.P. make the following statements while talking on a toy telephone and looking at a picture of Puffenbarger:  "I am going to get the belt.  A policeman. Go kick that window. Phone. Get the stick. I am going to shoot you. * * * A policeman.  My mom seen the policeman. * * * What you do that to my mom. * * * Policeman hit my mommy. Put tape on her[.]"  As a result, Phyllis Puffenbarger contacted the police and, at their suggestion, took D.P. to a licensed child psychologist, Dr. Dawn Lord, who elicited several similar statements.

Several years later, police officers visited McCarley's home regarding an unrelated matter.  The police officers and McCarley spoke in his garage, and while speaking a police officer saw a "deputy sheriff's jacket and sheriff's cap strewn across a moving dolly."  In light of

2

(5:09CV02012)

D.P.'s statements regarding a person in uniform hurting Puffenbarger, the police officer

confiscated the sheriff's jacket and cap as contraband.  *See* ECF No. 14; *State v. McCarley*, Case

No. 23607, 2008 WL 375842 (Ohio Ct. App. Feb. 13, 2008).

### B.  Procedural Background

On May 21, 2004, a grand jury indicted Petitioner on one count of aggravated murder in

violation of R.C. 2903.01A.  At trial, the jury found Petitioner guilty.  On appeal, however, the

court reversed the jury's verdict and remanded the case due to a trial error.  At the conclusion of

the second trial, the jury found Petitioner guilty of aggravated murder.  Consequently, Petitioner

was sentenced to life imprisonment with the possibility of parole in twenty years.[2]  *See* ECF No.

14; *McCarley*, 2008 WL 375842, at *1.

After his retrial, Petitioner filed a direct appeal and raised five assignments of errors:

1. The trial court erred in allowing Dr. Lord to testify regarding statements made
to her by the decedent's three-year-old son, in violation of appellant's
constitutional right to confront and cross-examine witnesses against him.

2. The court erred in permitting evidence of "other acts" via the testimony of Kimberly
Pennington in violation of the Ohio Rules of Evidence.

3. The court erred in permitting hearsay evidence from numerous witnesses, in direct
violation of the defendant's right to confront his accusers and in violation of Ohio Rules
of Evidence involving hearsay.

4. There was insufficient evidence as a matter of law as to the essential
element of prior calculation and design to sustain the conviction for aggravated

---

[2]  Petitioner was convicted in the Court of Common Pleas for Summit County, Ohio
within the Northern District of Ohio and remains incarcerated.  *See* Ohio Department of
Rehabilitation and Correction, http://www.drc.ohio.gov (last visited May 21, 2012).  The Court,
therefore, has jurisdiction over Petitioner's Petition.  *See* 28 U.S.C. § 2241(d).

(5:09CV02012)

murder.

5. The trial court erred in allowing DNA evidence without holding a pretrial evidentiary hearing to determine the reliability and admissibility of such evidence.

ECF No. 14 at 4; *McCarley*, 2008 WL 375842.  The court of appeals overruled his alleged assignments of errors and affirmed the conviction.  ECF No. 14 at 4; *McCarley*, 2008 WL 375842.

Petitioner subsequently appealed to the Supreme Court of Ohio, presenting five proposition of law to which the Court denied leave and dismissed the appeal as not involving any substantial constitutional question.  ECF No. 14 at 5; *State v. McCarley*, 118 Ohio St.3d 1464, 888 N.E.2d 1115 (2008).

During the pendency of Petitioner's appeal to the Supreme Court of Ohio, Petitioner filed an application to reopen his appeal pursuant to Ohio App. Rule 26(B) alleging that appellate counsel was ineffective for failing to raise the following assignments of error:

1. The trial court violated Mr. McCarley's rights to due process and a fair trial when it allowed identification testimony arising from an identification process that was unnecessarily suggestive and conducive to misidentification. Fifth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

2. The prosecutor's pervasive pattern of misconduct throughout trial violated Mr. McCarley's rights to due process and a fair trial. Fifth and Fourteenth Amendments to the United States Constitution, and Section 10 and 16, Article I of the Ohio Constitution.

3. Trial counsel rendered constitutionally deficient performance when he failed to object to the erroneous admission of other-acts testimony; when he failed to object to numerous improper remarks made by the prosecutor during closing argument; when he failed to object to unauthenticated police reports, which contained inadmissible hearsay; and when he failed to object to the admission of multiple gruesome photographs. Sixth and Fourteenth Amendments, United States

4

(5:09CV02012)

> Constitution; Section 10, Article I, Ohio Constitution.
>
> 4. Mr. McCarley was denied his constitutional right to a fair trial due to the cumulative effect of errors that occurred throughout his trial.  Sixth and Fourteenth Amendments, United States Constitution; Section 10, Article I, Ohio Constitution.

ECF No. 14 at 5-6.  The court of appeals denied his application, and Petitioner appealed the

denial to the Supreme Court of Ohio raising the following two propositions of law:

> 1. When an appellate attorney fails to raise numerous, meritorious issues in a criminal defendant's one and only direct appeal, and when appellate counsel instead raises weak, unconvincing issues, the attorney renders constitutionally inadequate assistance, in contravention of the Fourteenth Amendment to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
>
> 2. The court of appeals deprives a defendant of due process by refusing to reopen a direct appeal when the defendant has presented a "genuine issue" that he or she was deprived the effective assistance of appellate counsel.

ECF No. 14 at 6.  The Supreme Court of Ohio dismissed the appeal as not involving any

substantial constitutional question.  ECF No. 14 at 6; *McCarley*, 118 Ohio St.3d 1464.

### C.  Grounds for Relief

Petitioner filed the instant petition for a writ of habeas corpus, presenting five grounds for

relief:

> **Ground One**:  Petitioner's right to confront the witnesses against him, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, were violated when the court admitted out of court statements made by a child when the adult interviewer, working at the behest of law enforcement, deliberately elicited the statements to investigate a past crime.
>
> **Ground Two**:  Petitioner's right to due process of law and a fair trial were violated when the trial court allowed the admission of irrelevant character and other-acts evidence in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

5

(5:09CV02012)

> **Ground Three**:  Petitioner's right to [] confront witnesses against him was
> violated when the jury was permitted to consider witnesses' statement regarding
> what the victim told them about Petitioner before she was murdered in violation
> of the Sixth and Fourteenth Amendments to the United States Constitution.

> **Ground Four**:  Petitioner was denied the effective assistance of trial counsel, in
> violation of the Sixth and Fourteenth Amendments to the United States
> Constitution, when trial counsel failed to object to serious errors during
> Petitioner's trial.

> **Ground Five**:  Petitioner was denied the effective assistance of appellate counsel,
> in violation of the Sixth and Fourteenth Amendments to the United States
> Constitution, when appellate counsel failed to raise meritorious issues in
> Petitioner's appeal of right.

ECF No. 1-2.  In his Traverse, Petitioner withdrew his Third and Fourth Grounds for Relief.

ECF No. 10 at 21.

## II.  Standard of Review for a Magistrate Judge's Report and Recommendation

When objections have been made to the magistrate judge's Report and Recommendation,

the District Court standard of review is *de novo*.  Fed. R. Civ. 72(b)(3).

A district judge:

> must determine de novo any part of the magistrate judge's disposition that has
> been properly objected to.  The district judge may accept, reject, or modify the
> recommended disposition; receive further evidence; or return the matter to the
> magistrate judge with instructions.

*Id*.

Accordingly, the Court has conducted a *de novo* review of the portions of the magistrate

judge's Report to which Petitioner has properly objected.

## III.  Law and Analysis

Petitioner filed his § 2254 Petition on August 27, 2009.  ECF No. 1.  Therefore, the

(5:09CV02012)

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the Court's review

of the petition.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997); *see also Woodford v.

Garceau*, 538 U.S. 202, 210, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003).[3]

### A.  Ground One:  Violation of Confrontation Clause

The Sixth Amendment Confrontation Clause states:  "In all criminal prosecutions, the

accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const.

amend. VI.  The United States Supreme Court in *Crawford v. Washington* held that where

"testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law

required: unavailability and a prior opportunity for cross-examination."  *See Crawford v.

Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  Petitioner contends that

the introduction of D.P's out-of-court statements *via* child-psychologist Dr. Dawn Lord's

testimony violated Petitioner's Sixth Amendment right to confrontation because D.P. "did not

testify at trial as he had no recollection of either the crime or his purported statements related to

the crime."  ECF Nos. 1-2 at 1; 17 at 3-9.

### 1.  Testimonial

Petitioner's rights under the Confrontation Clause were at issue when Dr. Lord read three

letters that she wrote to Lieutenant John Karabatsos detailing her therapy sessions with D.P.

ECF Nos. 7-5 at 142-154; 14 at 20-21.  The magistrate judge found that the State court's

determination that the statements were not "testimonial" is not contrary to or an unreasonable

---

[3]  The AEDPA applies to petitions filed after the Act's April 26, 1996 effective date.
*Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

(5:09CV02012)

application of clearly established federal law as expressed in United State Supreme Court precedent.  ECF No. 14 at 25.  Petitioner argues that the magistrate judge's reliance upon the narrow definition of "testimonial" in *Miller v. Stovall*, 608 F.3d 913 (6th Cir. 2010) is an incomplete reading of *Crawford* and, therefore, erroneously found that D.P.'s statements were not "testimonial."  ECF No. 17 at 2-7.  The Court must consider whether the State court's decision to allow Dr. Lord's testimony was error permitting  relief under AEDPA.

In light of recent United States Supreme Court precedent, the Sixth Circuit has explained that the review granted by AEDPA is "even more constricted than AEDPA's plain language already suggests" because as long as "fairminded jurists could disagree on the correctness of the state court's decision," then relief is precluded under AEDPA.  *Peak v. Webb*, 673 F.3d 465, 471 (6th Cir. 2012) (quoting *Harrington v. Richter*, - - - U.S. - - -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011)).  In accordance with *Harrington*, the Sixth Circuit, therefore, stated that "if it is possible for a fairminded jurist to believe that the State court's rationale comports with the holding in *Crawford*, then we must deny relief.  This is a very high standard, which the Court freely acknowledges." *Peak*, 673 F.3d at 472 (citing *Harrington*, 131 S.Ct. at 178).

The *Crawford* holding, unfortunatley, does not set forth a comprehensive definition of the term "testimonial."  The Supreme Court in *Davis v. Washington* and its companion case, *Hammon v. Indiana*, provided some guidance as to what is and is not "testimonial" within the meaning of *Crawford*:

> Without attempting to produce an exhaustive classification of all conceivable statements–or even all conceivable statements in response to police interrogation–as either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made in the

8

(5:09CV02012)

> course of police interrogation under circumstances objectively indicating that the
> primary purpose of the interrogation is to enable police assistance to meet an
> ongoing emergency. They are testimonial when the circumstances objectively
> indicate that there is no such ongoing emergency, and that the primary purpose of
> the interrogation is to establish or prove past events potentially relevant to later
> criminal prosecution.

547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).  Further, in *Michigan v.*

*Bryant*, the Supreme Court reiterated that when "the primary purpose of an interrogation is to

respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not

within the scope of the [Confrontation] Clause." *Bryant*,  - - - U.S. - - -, 131 S.Ct. 1143, 1155,

179 L.Ed.2d 93 (2011) (quoting *Davis*, 547 U.S. at 822, 126 S.Ct. 2266).[4]

The record, however, reflects that Dr. Lord's continuing therapy sessions with D.P.

objectively indicates that there was no ongoing emergency that would exempt D.P.'s statements

from  loosely defined category of testimonial.  Petitioner highlights that D.P.'s first therapy

session with Dr. Lord took place within the week following Puffenbarger's homicide.  ECF Nos.

7-5 at 146; 17 at 7.  Dr. Lord prepared three letters for Lieutenant Karabatsos describing D.P.'s

recollection of Puffenbarger's homicide.  ECF No. 7-5 at 142-167.  Dr. Lord prepared the first

letter on January 30, 1992 and the third letter on June 6, 1992.  ECF No. 7-5 at 146, 153.

Petitioner argues that according to the record, the primary purpose of sending D.P. to therapy was

to establish the events that took place during Puffenbarger's homicide, which are relevant to his

---

[4]  Notably, a month after Petitioner filed his objections, the United States Supreme Court
vacated and remanded *Miller v. Stovall* for further consideration in light of *Greene v. Fisher*, 565
U.S. - - -, 132 S.Ct. 38, - - - L.Ed.2d - - - (2011) (explaining "the purpose of AEDPA is to ensure
that federal habeas relief functions as a guard against extreme malfunctions . . . and not as a
means of error correction").  *See Stovall v. Miller*, 132 S.Ct. 573, 181 L.Ed.2d 418 (U.S. Nov.
14, 2011).

(5:09CV02012)

criminal prosecution.  For example, Lieutenant John Karabatsos testified:

> When we - - when we originally talked to him, we determined that I was - - myself or Officer Breiding, neither one, were going to be able to extract any information from him, and we determined it was necessary to bring somebody who was a child psychologist, possibly, or somebody who was a child therapist in to speak with him, see if they could extract any information from him that he remembered from that evening.  And, of course, we believed that over the course of time he would need some assistance anyhow.

ECF Nos. 7-7 at 99; 17 at 6.  Lieutenant Karabatsos further testified that he "went to Child Guidance to find someplace to send [D.P.] for the purpose of finding out what he saw that evening."  ECF Nos. 7-7 at 116-17; 17 at 6-7.  In light of Lieutenant Karabatsos' testimony, it is clear that D.P's statements were used to solve homicide for which Petitioner was convicted. The admission of Dr. Lord's testimony containing D.P.'s statements without cross-examination of D.P. was, therefore, in contravention of the rule established in *Crawford*.  The analysis, however, does not stop there because the Court must also address whether this violation of the Confrontation clause was a harmless error.[5]  *Jordan v. Hurley*, 397 F.3d 360, 363 (6th Cir. 2005); (citing *Bulls v. Jones*, 274 F.3d 329, 334 (6th Cir. 2001) (finding that the *Brecht* harmless error test applies to alleged Confrontation Clause violations in habeas reviews post-AEDPA).

---

[5]  In analyzing the instant case, the Ohio Court of Appeals, appropriately cited *Crawford* and a Supreme Court of Ohio case, *State v. Siler*, 116 Ohio St.3d 39 (Ohio 2007) ( "holding that a three year old child's statements to police were testimonial because the primary purpose of the questioning was to establish past events for later prosecution").  ECF No. 14 at 20.

10

(5:09CV02012)

### 2.  Harmless Error

For purposes of habeas corpus review, a court must assess the prejudicial impact of constitutional errors in a State court trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).  When applying the *Brecht* standard, the Supreme Court held that, rather than placing the burden of proof on the petitioner, the sitting judge must ask directly, "Do I, the judge, think that the error substantially influenced the jury's decision?"  *O'Neal v. McAninch*, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).[6]

In determining whether a Confrontation Clause violation is harmless under *Brecht*, the Sixth Circuit has repeatedly referred to the factors laid out in *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).  Those factors include:  (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case.  *Id.*; *see Jensen v. Romanowski*, 590 F.3d 373, 378 (6th Cir. 2009).  The Court will assess the prejudicial impact of the admission of Dr. Lord's testimony under *Brecht's* "substantial and injurious effect" standard by examining the error through the

---

[6]  According to *O'Neal v. McAninch*, if the sitting judge determines that the error had no or a small effect, the verdict must stand.  513 U.S. 432, 436.  However, if the judge has "grave doubts" as to whether the trial error had substantial or injurious effect or influence in determining the jury's verdict to the extent that the judge is in a state of "virtual equipoise" as to harmlessness, the judge must treat the error as if it were harmful and grant the petitioner's writ. *Id.* at 435, 445; *see Jensen v. Romanowski*, 590 F.3d 373, 378 (6th Cir. 2009).

11

(5:09CV02012)

factors set forth in *Van Arsdall*. *Jensen*, 590 F.3d at 379.

      Dr. Lord, because she had no independent recollection of having treated D.P., was permitted to read to the jury the three letters she had written conveying detailed descriptions of the events surrounding Puffenbarger's homicide, as they had been told to her by D.P.  Relying upon these letters, Dr. Lord testified that D.P. consistently stated:  two men who his mother personally knew came over to his house dressed in some type of uniform; one man had a gun and hit his mother on the top and back of the head with the gun; during the attack, one man retrieved a belt from his mother's closet and hurt his mother with it; and, the two men argued once his mother was dead.  ECF No. 7-5 at 142-154.  Dr. Lord further testified that she presented D.P. with six photographs on two occasions, and D.P. consistently chose pictures of Petitioner and "possibly [Petitioner's] friend," from the those shown to him.  ECF No. 7-5 at 152.

      In addition to Dr. Lord's testimony, the prosecution presented testimony of Phyllis Puffenbarger ("Phyllis"), D.P.'s maternal grandmother.  Phyllis testified that, the night of the homicide, Puffenbarger was afraid to be alone because she and Petitioner had argued, and Petitioner had previously told Puffenbarger that he would kill her before paying child support.  ECF No. 7-5 at 35-42.  Phyllis also testified that, four days after the homicide,  D.P. started talking to a photograph of his mother about the homicide.  ECF No. 7-5 at 56.  Phyllis wrote down D.P.'s statements and read them to the jury:[7]

---

    [7] The trial court admitted these and similar statement testified to by Officer Eric Breiding, *supra*, as excited utterances.

12

(5:09CV02012)

> I am going to get the belt.  A policeman.  Go kick that window.  Phone.  Get the
> stick.  I am going to shoot you.  Kick the window.  Bathroom.  Are you out of
> here.  Don't have no phone.  You got a phone.  A policeman.  My mom seen the
> policeman.  Gun.  Threw in garbage.  Sleeping on couch.  I am going to crack
> you.  Kick the window.  Not getting out of here.  Bob.  I am not going to your
> house.  Corner.  Call Paw Paw.  Get your radio.  Go to sleep.  Don't shoot.  Paw
> Paw got the paper.  Policeman did it, not the guy.  Lights on.  Big light.  No
> telephones.  You hear me.  Policeman got buttons.  What do you come to my
> house for.  What you do that to my mom.  You break window.  Bob.  Policeman
> hit my mommy.  Put tape on her.  Put nuts in her mouth.  Bad boy.  And he
> motions towards his neck.  Picked up her picture and pretend talking on the
> phone.  Belt hitting.  Not belt but with a gun.  I will break your foot.  Pillow.
> Head.  Derrek and me.  I don't want to shoot.  Do you want to go to bed.
> Policeman got out of my house.  We can't get the policeman out of here.

ECF No. 7-5 at 61-22.

The prosecution also presented the testimony of Officer Eric Breiding who testified that,

when he arrived at Puffenberger's apartment, after the murder, while pointing to the uniformed

officers, D.P. said "[i]t was him . . . [h]e hurt mommy."  ECF No. 7-7 at 23.  Phyllis testified

about these same statements.

The prosecution also presented testimony from Dennis Balogh, a former deputy with the

Summit County Sheriff's Office.  ECF No. 7-3 at 11.  Balogh testified that he was an initial

investigator for Puffenbarger's homicide and, therefore, familiar with Petitioner.  ECF No. 7-3

at 12.  Approximately three years after Puffenbarger's homicide, Balogh "accompanied another

detective who had a warrant for [Petitioner's] arrest" regarding an unrelated matter.  ECF No. 7-

3 at 13.  Upon arrival to Petitioner's house, Balogh explained that Petitioner was in his garage.

ECF No. 7-3 at 13.  After arresting Petitioner, Balogh testified that he observed a "uniform-type

jacket" with "big brass buttons" and a "Cuyahoga County Sheriff's Department" baseball cap

hanging on a two-wheel moving dolly in Petitioner's garage.  ECF No. 7-3 at 14-15.  Balogh

(5:09CV02012)

explained that the jacket was in plain view and "similar" to a Summit County deputy sheriff jacket.  ECF No. 7-3 at 15-16.  Balogh "took the jacket and baseball cap based on the information that was developed from the initial investigation early on."  ECF No. 7-3 at 16.

The appellate court considered all the above testimony and found harmless any error that may have resulted from the admission of D.P's statements to Dr. Lord, using the *Chapman* standard.[8]  The undersigned agrees.

Dr. Lord's recitation of the statements made by D.P. were cumulative of testimony provided by  three other witnesses–D.P's grandmother (Phyllis), Officer Breidling and former deputy Balogh.  Through each of those witnesses, the jury heard similar, if not identical, details to those presented through Dr. Lord.  The duplicative content of the testimony minimized the importance Dr. Lord's testimony, alone, may have had on the jury's findings.  Petitioner's claim that Dr. Lord's status as a child psychologist would have elevated her testimony above that of a grandmother and law enforcement officers is unsubstantiated.  Clearly, Dr. Lord's testimony was not the only manner by which the prosecution could have informed the jury of the details surrounding the homicide and link Petitioner to the crime.  In addition to drawing meaningful parallels, Defense counsel had the opportunity to effectively cross-examine each witness.  ECF Nos. 7-3 at 17-22; 7-5 at 70-93, 154-164; 7-7 at 32-42.  Without Dr. Lord's testimony, the

---

[8]  In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court decided that although state courts were still required to apply the *Chapman* beyond a reasonable doubt standard on direct review, federal courts on habeas review must determine whether the constitutional trial error "had a substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht*, 507 U.S. at 637 (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).

(5:09CV02012)

prosecution's case remained substantial and overwhelming.

Petitioner argues that only through Dr. Lord's testimony that D.P. chose Petitioner out of a photo line-up on two occasions is he "directly implicated" in homicide.  This is not so. Minimally, evidence of Petitioner's DNA at t he scene certainly implicates him.  This implication is not lessened because his natural son lived with Puffenberger.  While damaging, testimony of the photo-line up, alone, cannot be said to have outweighed or substantially influenced the jury's decision or provided a more compelling case for the prosecution.

Finally, during her testimony, Dr. Lord explicitly downplayed the significance of D.P.'s statements, as she warned:

> Due to [D.P's] young age, the time which has elapsed between the death of his mother, and the various interviews and the inherent difficulties in evaluating young children, it is not possible to definitely state who murdered  [D.P.'s] mother.  Rather, it is possible to take [D.P.'s] impressions of the situation and use them in order obtain further information.

ECF No. 7-5 at 152-53.  The admission of Dr. Lord's testimony, therefore, would not have substantially influenced the verdict because the prosecution offered overwhelming additional testimony.  Under these circumstances, the Court finds that, given corroborative nature of evidence at issue and overall strength of the prosecutions case, while D.P's statements admitted through Dr. Lord were testimonial, the resultant error was harmless as it had no substantial and injurious effect or influence in determining the jury's verdict.  *See Bulls v. Jones*, 274 F.3d at 335; *O'Neal* 513 U.S. at 436.  The State court's similar finding (of harmless error) was not contrary to or nor an unreasonable application of clearly established case law.

Petitioner's objection to the Report and Recommendation regarding his First Ground for

(5:09CV02012)

Relief is overruled.

### B.  Ground Two:  Admission of Irrelevant Character and Other-Acts Evidence

In his Second Ground for Relief, Petitioner contends that his right to due process of law

and a fair trial were violated when "the trial court allowed the admission of irrelevant character

and other-acts evidence in violation of the Fifth, Sixth and Fourteenth Amendments to the

United States Constitution."  ECF No. 1-2.

### 1.  Procedural Default

In his traverse, Petitioner presented an ineffective assistance of counsel appellate claim

as "cause" to excuse the procedural default of his ineffective assistance of trial counsel claim.

ECF No. 10 at 17-20.  The magistrate judge analyzed the merits of the ineffective assistance of

appellate counsel claim to determine whether that argument could, in fact, serve as "cause,"

excusing procedural default.  ECF No. 14 at 12-14.  The magistrate judge determined that, while

the claim had been preserved for habeas corpus review, Petitioner, ultimately, failed to satisfy

*Strickland v. Washington's* two-prong standard for establishing that ineffective assistance of

appellate counsel had occurred.  ECF No. 14 at 12-14; 466 U.S. 668 (1984).  The Report

concluded that Petitioner's ineffective assistance of appellate counsel claim could not serve as

"cause" and, therefore, Ground Two–Petitioner's ineffective assistance of *trial* counsel

claim–was procedurally defaulted.  ECF No. 14 at 12-14 (emphasis added).

Petitioner's objection indicates confusion over the possibility that his claim (ineffective

assistance of appellate counsel) could be both preserved for habeas review and, after further

review, insufficient to establish ineffective assistance.  Petitioner objects to the magistrate

16

(5:09CV02012)

judge's statement that Petitioner's "argument in his Rule 26(B) application was almost identical, and provides no further indication of why counsel's performance should be found deficient." ECF Nos. 14 at 13; 17 at 9-10.  In rather circular fashion, in response, Petitioner argues that "had appellate counsel raised the constitutional claim asserted in the Second Ground for Relief, it would not be held to have been procedurally defaulted." ECF No. 17 at 10.

Petitioner's objection is without merit.  The magistrate judge found that Petitioner's ineffective assistance of *appellate* counsel claim had been preserved for habeas review, but *not* his ineffective assistant of *trial* counsel claim, which was the basis for Petitioner's Second Ground.  ECF No. 14 at 12-14 (emphasis added).  In light of *Strickland v. Washington*, Petitioner failed to overcome the deference afforded the conduct of counsel by showing that appellate counsel's representation was deficient and that the deficient performance prejudiced the defense.  ECF No. 14 at 12-14; 466 U.S. 668.  In reaching this determination, the magistrate judge correctly recounted that appellate counsel's failure to raise as error trial counsel's failure to contemporaneously object to the admission of evidence of a former girlfriend regarding Petitioner's violent propensities and hatred toward women and three police reports may have been strategic and, as importantly, given the "appellate court's assessment of the admissible evidence in its ruling on McCarley's sufficiency argument, it is unlikely that this issue would have changed the result of the appeal." ECF No. 14 at 14.

Petitioner's objection as to the magistrate judge's Report and Recommendation regarding procedural default as to Ground Two is overruled.

(5:09CV02012)

## 2.  Failure to Raise Federal Claim

Petitioner argues that he presented a federal due process argument in his appeal to the Supreme Court of Ohio, and objects to the magistrate judge's finding that the "Supreme Court of Ohio will not consider a constitutional question which was not raised and argued in the lower courts."  ECF Nos. 14 at 16 (citing *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir.), cert. denied, 474 U.S. 831 (1985); *State v. Phillips*, 27 Ohio St.2d 294, 302, 272 N.E.2d 347, 352 (1971)); 17 at 10-11.  Petitioner attempts to factually distinguish *Leroy* and contends that the magistrate judge's reliance upon *Leroy* is mistaken.  ECF No. 17 at 10-11.

In addition to *Leroy*, the magistrate judge also relied upon *Baldwin v. Reese*, 541 U.S. 27 (2004).  In *Baldwin*, the United States Supreme Court explained that before seeking a federal writ of habeas corpus, the state prisoner must "fairly present his claim in each appropriate state court (including a *state supreme court* with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Id*. at 29 (internal citations and quotations omitted) (emphasis added).  The Court finds that the magistrate judge's Report and Recommendation accurately finds that Petitioner has not fairly presented a federal due process argument regarding his Second Ground for Relief to the Supreme Court of Ohio.

Petitioner's objections to the Report and Recommendation regarding his Second Ground for Relief are overruled.

## C.  Ground Five:  Application of *Strickland v. Washington*

Petitioner contends that he was denied the effective assistance of appellate counsel when counsel failed to raise meritorious claims on direct appeal.  ECF No. 17 at 11.  Petitioner

18

(5:09CV02012)

"generally objects to the R&R's finding that this ground for relief is meritless." ECF No. 17 at 11.

General objections are not sufficient to alert the Court to alleged errors made by the magistrate judge. In other words, if an "objection" merely states a disagreement with the magistrate judge's suggested resolution, it is not an objection for the purposes of this review. *Cvijetinovic v. Eberlin*, 617 F.Supp. 2d 620, 632 (N.D. Ohio 2008) rev'd on other grounds, 617 F.3d 833 (6th Cir. 2010). Such "general objections" do not serve the purposes of Federal Rule of Civil Procedure 72(b), which requires the Court to conduct a *de novo* review of only those portions of a magistrate judge's report and recommendation to which a party objects, and are equivalent to a failure to object. *See Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio Apr. 7, 2006). Therefore, Petitioner's objection to the Report and Recommendation regarding Ground Five is overruled.

## IV. Conclusion

The Court hereby adopts the Report and Recommendation (ECF No. 14). For the reasons stated above, Petitioner's Petition for Habeas Corpus (ECF No. 1) is denied in its entirety.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

__May 31, 2012__
Date

Benita Y. Pearson
United States District Judge
19